UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**FRIEDA AARON, et al.,**

    **Plaintiffs,**

v.

**AETNA, et al.,**

    **Defendants.**

Case No. 1:18-cv-631
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on the Defendants' collective Motion to Dismiss due to Misjoinder of Plaintiffs and Misjoinder of Defendants (Doc. 311), on Defendant Duke Energy Corporation's ("Duke Energy") Motion for Joinder Regarding Defendants' Motion to Dismiss due to Misjoinder of Plaintiffs and Misjoinder of Defendants (Doc. 312), and on three plaintiff-side Motions to Substitute Party (Docs. 360, 363, 365). For the reasons below, the Court **GRANTS** the Defendants' collective Motion (Doc. 311) and thereby **DISMISSES** all claims in the Plaintiffs' Amended Complaint (Doc. 169) **WITHOUT PREJUDICE**, with the exception of Plaintiff Frieda Aaron's claims. Within the next thirty days, Plaintiff Aaron will file a Second Amended Complaint as to her claims only. The Court also **DENIES AS MOOT** Duke Energy's Motion (Doc. 312) and the three Motions to Substitute Party (Docs. 360, 363, 365).

## BACKGROUND

There are over 400 plaintiffs in this case and over 60 defendants. While this numerosity in itself would not necessarily be legally problematic, in this instance it

results from a misuse of the litigation process. More specifically, this case really consists of over 400 separate lawsuits crammed together into one. To remedy the situation, the Court elects to sever the claims of all but one of the Plaintiffs and to dismiss those severed claims without prejudice. That will allow individual lawsuits to be re-filed as appropriate and desired.

The Plaintiffs are hundreds of different individuals who allegedly received medically unnecessary spinal surgeries from Dr. Abubakar Attiq Durrani. But Durrani is not among the many Defendants in this case. Instead, the Defendants are dozens of insurance companies, benefits plan administrators, and similar entities that allegedly approved or played some role in approving one or more of the spinal surgeries at issue. The Plaintiffs' general theory of liability is that, in approving Durrani's allegedly wrongful spinal surgeries, the Defendants committed tort and ERISA violations that caused the Plaintiffs various harms. These alleged harms include medical liens by the Defendants themselves against the Plaintiffs' assets, which the Plaintiffs say the Defendants should therefore be unable to enforce.

The Plaintiffs filed their original Complaint (Doc. 1) in this action on September 7, 2018. They filed the operative Amended Complaint (Doc. 169) over one year later on October 28, 2019, after receiving numerous extensions of time to file.

Both pleadings follow the same basic format. Focusing on the operative Amended Complaint, it comprises 147 pages, about 66 of which simply list all the Plaintiffs and Defendants in the action. (*See generally* Am. Compl., Doc. 169, #742–807). After about four pages of general factual allegations come another sixty pages

2

of allegations in the following form: "[Plaintiff A] had surgery at [Hospital] under [Defendant] [Insurance Plan Number]." (*See generally id.* at #811–71). In other words, each Plaintiff does not assert claims against all or even most of the Defendants in this case. Rather, perhaps unsurprisingly, each Plaintiff has claims against only one or at most a few Defendants, namely the ones involved in approving that Plaintiff's surgery. Following this are about five pages identifying the Defendants, and then about ten pages of causes of action, which include breach of contract, negligence, constructive fraud, breach of ERISA fiduciary duty, and ERISA equitable estoppel, with corresponding statements of the relief sought. (*See id.* at #872–87).

On December 20, 2019, Phia Group, LLC ("Phia")—one of the Defendants—filed a Motion to Dismiss (Doc. 185). Phia argues that the First Amended Complaint makes no factual allegations against Phia and therefore fails to state a claim against Phia. More specifically, Phia notes that the only mention of Phia in the entire First Amended Complaint states that "The Phia Group, LLC is a Massachusetts Limited Liability Company operating in the Southern District of Ohio." (Phia Mot., Doc. 185, #1262 (quoting Am. Compl., Doc. 169, #876)). The Plaintiffs have not responded to Phia's Motion pursuant to an extension and subsequent stay of deadlines with respect to that Motion. (*See* 1/14/20 Order, Doc. 217; 2/27/20 Minute Entry). Accordingly, the Court does not rule on Phia's Motion now. However, as discussed in more detail below, the Court's disposition of the Defendants' collective Motion to Dismiss may lead to Phia's Motion becoming moot if the single Plaintiff who will remain in this action asserts no claims against Phia.

On May 7, 2020, the Defendants[1] collectively filed a single Motion to Dismiss (Doc. 311).[2] The motion argues that joinder, both of the various Plaintiffs and of the various Defendants in this single action, violates Federal Rule of Civil Procedure 20 because the claims at issue do not arise out of the same "transaction, occurrence, or series of transactions or occurrences." (Misjoinder Mot., Doc. 311, #1584). The Plaintiffs disagree, arguing that the "notoriety" of Durrani as a fraudulent spinal surgeon presents an issue common to all the claims at issue here. (Misjoinder Opp'n, Doc. 326, #1660). The Defendants replied (Doc. 339) on September 22, 2020, and the matter is now fully briefed and before the Court.

More recently, two of the Plaintiffs have filed a total of three Motions to Substitute (Docs. 360, 363, 365). More specifically, Plaintiffs Irene Hyde and Jeffrey Neu have both died during the pendency of this action, and their estates seek to substitute themselves for these two Plaintiffs. As discussed in more detail below, the Court's disposition of the Defendants' collective Motion to Dismiss renders these three Motions to Substitute moot.

---

[1] The Motion indicates that it is joined by "most" of the Defendants. (Doc. 311, #1583). Due in part to variances of nomenclature between the docket and signature page of the Motion, the Court is not entirely clear as to which Defendants have not joined the Motion. But as discussed in more detail below, the Court is free to grant the relief the Defendants' Motion requests to all Defendants, whether a given Defendant has joined in the Motion or not.

[2] Somewhat amusingly, on the same day, Duke Energy filed what it styled a "Motion for Joinder" (Doc. 312). But Duke Energy meant that it sought to join the other Defendants' *Motion*. (That is, Duke Energy moved to join the other Defendants' arguments *against* joinder.) As discussed in more detail below, Duke Energy's Motion is moot because the Court has the authority to "drop" Duke Energy as a party whether or not Duke Energy is included among the movants for purposes of the Defendants' Motion to Dismiss (Doc. 311). *See* Fed. R. Civ. P. 21. The Court therefore **DENIES AS MOOT** Duke Energy's Motion for Joinder (Doc. 312).

4

## LEGAL STANDARD

Federal Rule of Civil Procedure 20(a)(1)–(2) allows joinder of either plaintiffs or defendants in connection with "any right to relief" asserted "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," provided that "any question of law or fact" common to all of them will arise in the action. In turn, the correct procedural vehicle for removing misjoined parties from an action is Federal Rule of Civil Procedure 21. Rule 21 states, in full: "Misjoinder of parties is not a ground for dismissing an action. On Motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In determining whether to sever claims, courts may consider factors including: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018). The remedy for misjoinder lies within the district court's sound discretion and may include "dismissal of claims against misjoined parties." *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988).

## LAW AND ANALYSIS

The Defendants contend that the Plaintiffs have failed to satisfy Rule 20's requirements for permissive joinder. The Court agrees, for two related reasons. First,

5

the claims of the various Plaintiffs against the various Defendants do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(1)–(2). Second, even if this requirement were met, which the Court determines it is not, the *Parchman* factors would still counsel severance of all Plaintiffs and of all Defendants from one another.

To start, the Court has little doubt that the claims of the various Plaintiffs against the various Defendants do not arise out of "the same transaction or occurrence." *See* Fed. R. Civ. P. 20(a)(1)–(2). They involve surgeries and claims approvals for different patients, at different times, under different insurance plans. *See Michaels Bldg. Co.*, 848 F.2d at 682 (affirming severance and dismissal of misjoined RICO and antitrust claims where "the various transactions … 'involve different banks, different contracts and different terms'").

True, Rule 20 would also allow joinder if the claims pertaining to the various Plaintiffs and Defendants were part of the same "series of transactions or occurrences." But under the case law of this district and circuit, the claims at issue here do not meet that standard either. More specifically, courts have required the transactions or occurrences that constitute a "series" to have some substantial *relationship to one another*, and have explicitly rejected the argument that mere commonality among otherwise unrelated events is enough to make them part of the same series. *See id.*; *see also DIRECTV, Inc. v. Collins*, 244 F.R.D. 408, 410 (S.D. Ohio 2004) ("transactional relatedness element" of Rule 20 not met where "transactions are logically related to one another" only "in the same way that purchases of milk

6

from the grocery store are logically related to each other: each transaction involves a … similar good for a similar purpose") (citation and internal quotation marks omitted); *United States v. Katz*, 494 F. Supp. 2d 645, 648–49 (S.D. Ohio 2006) (similar but unrelated fraudulent conveyances by different defendants in connection with government cleanup of single hazardous waste site did not form same series of transactions). Viewed in this light, the claims at issue here are not related so as to form part of the same series of transactions or occurrences, despite the one commonality they apparently share—namely, that they all involve allegedly medically unnecessary spinal surgeries performed by Durrani. Joinder is therefore improper.

Analysis under the *Parchman* factors leads to the same result under much the same reasoning. *See Parchman*, 896 F.3d at 733. As already discussed above, the various Plaintiffs' claims against the various Defendants do not arise out of the same transaction or occurrence. The common questions of law or fact that would be material to resolving the Plaintiffs' claims are limited at best. In fact, the Plaintiffs identify only one common issue, namely "the notoriety of Durrani being a known incompetent surgeon," such that the Defendants should never have approved the claims for spinal surgeries performed by him. (Misjoinder Opp'n, Doc. 326, #1660). But even this "notoriety" argument would depend to some extent on the facts of each Plaintiff's case. For example, the timing of the particular surgery at issue would make a difference—the Amended Complaint includes surgeries that took place over the course of nearly a decade from 2005 to 2013—as would a given Defendant's level of

7

familiarity with providers in the area. The Court also sees little to indicate that the presence in this action of hundreds of Plaintiffs and dozens of Defendants, some of whom have not even been served with process, has facilitated settlement or served the interests of judicial economy. Granting severance of the claims at issue here will avoid prejudice to those Defendants who may have few claims against them (or indeed none at all, as Phia argues is the case for it). Among other things, such Defendants will be relieved of monitoring the docket of a mega-case in which at most a tiny fraction of the filings will ever concern any claims against them. Finally, the claims of the various Plaintiffs and Defendants at issue here will assuredly require different witnesses and different documentary proof to establish both liability and damages.

If anything, the case for joinder here is significantly weaker than in several of the cases cited above where joinder was improper, because in this action, no Plaintiff has a claim against all or even many Defendants, while no Defendant is subject to a claim by all or even most Plaintiffs. *Cf. Michaels Bldg. Co.*, 848 F.2d at 682 (common plaintiff sued several different banks from which it had similar but unrelated loans); *DIRECTV, Inc.*, 244 F.R.D. at 411 (common plaintiff sued several different individuals who allegedly pirated its satellite broadcast programming); *Katz*, 494 F. Supp. 2d at 648 (United States government civilly sued several different defendants). *Parchman* presented a scenario more formally similar to this one, albeit on a much smaller scale. There, two plaintiffs each had a similar claim against only one of two different defendants, but not the other. *See Parchman*, 896 F.3d at 733. The Sixth Circuit affirmed severance of one plaintiff's claims from the other's. Because the two

8

plaintiffs were not subject to the conduct of the same defendant, it was "clear" that the transactions or occurrences were not the same and that different witnesses and documentary proof would be necessary for each set of claims. *Id.* at 734.

For these reasons, the combination of the claims of the various Plaintiffs against the various Defendants in this action has resulted in a misjoinder of both Plaintiffs and Defendants. But even given this conclusion, the parties disagree as to the appropriate remedy. The Plaintiffs ask the Court for "severance into individual cases before the same district judge," (Misjoinder Opp'n, Doc. 326, #1661), while the Defendants request dismissal of the severed claims without prejudice to re-filing (Misjoinder Mot., Doc. 311, #1593). The Court determines that the latter course of action is warranted here, for related reasons of judicial economy and fairness to all parties.

First, in the interests of judicial economy, it is far from clear that the allegations of the First Amended Complaint would even allow the Court to determine exactly which Plaintiffs have claims against exactly which Defendants. The Court also sees no warrant to take on this task in the first instance. Better to allow each Plaintiff to submit a new complaint identifying the Defendant or Defendants against whom that Plaintiff asserts claims.

Second, and relatedly, it would be more fair to both Plaintiffs and Defendants to allow each Plaintiff the opportunity, in light of the Court's ruling on the joinder issue, to determine whether and how to pursue any claims against one or more of the

9

Defendants.[3] *See Alford v. Mohr*, Civil Action 2:19-cv-1497, 2019 WL 1876776, at \*2 (S.D. Ohio Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 3000964 (S.D. Ohio July 10, 2019) ("The undersigned finds [dismissal without prejudice of the severed claims] to be more just than directing the Clerk to automatically open cases for the severed claims because this approach allows Plaintiff the opportunity to consider whether he would like to pursue separate actions, which could subject him to paying additional filing fees."). The Court has the authority to dismiss the severed claims, *see Michaels Bldg. Co.*, 848 F.2d at 682, and the Court in its discretion exercises that authority here. Moreover, the Court may and does dismiss without prejudice even the claims against any Defendants who may not have joined the Defendants' Motion (Doc. 311), as Rule 21 authorizes the Court "on its own" to "drop a party." *See Davis v. Fulton Cnty., Ark.*, 884 F. Supp. 1245, 1250 (E.D. Ark. 1995), *aff'd*, 90 F.3d 1346, 1354 (8th Cir. 1996) (terminating misjoined plaintiff sua sponte).

Nevertheless, Rule 21 expressly forbids "dismissing an action" as the remedy for misjoinder. Here, none of the Plaintiffs is properly joined to any other Plaintiff, and none of the Defendants is properly joined to any other Defendant. Thus, the only way to stop short of "dismissing an action" while also granting the Defendants the relief to which they are entitled is to select a single Plaintiff whose claims as to one

---

[3] The Court notes that its present determination as to severance and dismissal under Rule 21 would not preclude *consolidation* of any subsequent separately filed cases with respect to one or more common issues under Rule 42. *See* Fed. R. Civ. P. 42. Consolidation under Rule 42 and severance under Rule 21 are different procedures governed by different standards, and the Court expresses no view at this time as to the appropriateness of consolidation of any subsequently re-filed cases at a later stage of this litigation. *See DIRECTV, Inc. v. Collins*, 244 F.R.D. 408, 411 n.2 (S.D. Ohio 2007).

or more of the Defendants may proceed. The parties do not address how to choose that Plaintiff, and the Court perhaps unsurprisingly finds little guidance in case law. Unlike misjoinder cases where one transaction or occurrence manifestly predominates over others, here the Amended Complaint simply provides no basis for differentiating among the hundreds of Plaintiffs with thousands of potential claims against dozens of Defendants. *Cf. Harris v. Gerth*, No. 08-CV-12374, 2008 WL 5424134, at *5 (E.D. Mich. Dec. 30, 2008) (court chose one "'lead' [p]laintiff" among misjoined pro se prisoner plaintiffs to continue action where that plaintiff's individual claims were more numerous than any other's). In the absence of any such basis of differentiation, the Court will allow the first named Plaintiff, Frieda Aaron, to continue in this action as to her claims. Aaron shall have thirty days to file a Second Amended Complaint against one or more of the Defendants as to her claims only. The Court **DISMISSES WITHOUT PREJUDICE** the claims of all other Plaintiffs.

As for the other pending motions, the Court **DENIES AS MOOT** the three Motions for Substitution (Docs. 360, 363, 365) because the relevant Plaintiffs are now dismissed without prejudice from this action. Out of an excess of caution, the Court declines to rule on Phia's Motion to Dismiss (Doc. 185) at this time. But should Aaron's Second Amended Complaint fail to include any claims against Phia, that Defendant, along with any others against whom Aaron fails to make any claims, will also be terminated from this action. That will render Phia's Motion moot as well.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' collective Motion (Doc. 311) and thereby **DISMISSES** all claims in the Plaintiffs' Amended Complaint (Doc. 169) **WITHOUT PREJUDICE**, with the exception of Plaintiff Frieda Aaron's claims. Within the next thirty days, Aaron will file a Second Amended Complaint as to her claims only. The Court **DIRECTS** the Clerk to **TERMINATE** from this action all Plaintiffs other than Aaron. After Aaron files her Second Amended Complaint, the Court also **DIRECTS** the Clerk to **TERMINATE** from this action all Defendants against whom Aaron does not assert any claims. The Court also **DENIES AS MOOT** Duke Energy's Motion (Doc. 312) and the three Motions to Substitute Party (Docs. 360, 363, 365).

    **SO ORDERED.**

July 19, 2022
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**